Case 4:17-cv-01312 Document 38 Filed on 06/01/18 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
June 01, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY PETEET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1312 |
| | § | |
| SAMUEL HAWKINS and THE UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant United States of America's ("United States") Motion to Dismiss (Doc. 29). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the United States' motion to dismiss be **GRANTED**.

**I. Case Background**

Plaintiff filed this action against the United States and Defendant Samuel Hawkins ("Hawkins") (collectively, "Defendants") claiming that Hawkins violated her Eighth Amendment rights and asserting claims against Defendants for negligence, assault, battery, and intentional infliction of emotion distress pursuant to

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 20, Ord. Dated Aug. 10, 2017.

the Federal Tort Claims Act[2] ("FTCA").[3]  Plaintiff alleges that she was sexually abused and assaulted by Hawkins, a prison guard, while she was incarcerated at the federal detention center in Houston, Texas.[4]

Plaintiff alleges that the abuse by Hawkins commenced in July 2015, when he "began a course of intimidation and coercion" towards her.[5]  Plaintiff claims that Hawkins forced her to perform oral sex on him at least six times and engaged in vaginal sex with Plaintiff at least once before November 15, 2015.[6]  Hawkins also had sexual relationships with other female inmates during this time period.[7]  When other inmates learned that Plaintiff was sexually involved with Hawkins, she faced "an extremely hostile environment" which included "intimidation and mistreatment by fellow inmates."[8]

On November 14, 2015, Hawkins placed Plaintiff's cell mate in a special housing unit, which Plaintiff alleges was "for clearly bogus reasons."[9]  On November 15, 2015, with four days remaining on her sentence, "Hawkins coerced [Plaintiff] to attempt to taunt male

---

[2] 28 U.S.C. §§ 1346(b), 2671-80.

[3] See Doc. 24, Pl.'s 1st Am. Compl.

[4] See id.

[5] Id. p. 3.

[6] See id.

[7] See id.

[8] Id. pp. 3-4.

[9] Id. p. 4.

inmates at the Detention Center, . . . and Hawkins then became physically jealous and angry with [Plaintiff] when she spoke with a male inmate."[10] Hawkins took Plaintiff to her cell and told her, "We are going to have our first fight tonight."[11] Hawkins then raped Plaintiff.[12] Hawkins later went back to Plaintiff's cell to show her a sexual harassment complaint against Hawkins made by another female inmate.[13] Once a shift change occurred on November 15, 2015, Plaintiff reported the assault and was taken to a hospital where she was examined and administered a rape kit.[14] Upon her return to the detention center, Plaintiff remained in isolation in the medical wing where she alleges she was "subjected to intimidation and extremely cruel treatment" until she was released from confinement on November 19, 2015.[15]

The United States Department of Justice's Office of the Inspector General proceeded to investigate the incident and the rape kit was positive for Hawkins' DNA.[16] Hawkins was charged with, and pled guilty to, one count of sexual abuse of a ward pursuant to 18 U.S.C. § 2243(b), receiving a sentence of five months

---

[10] Id.

[11] Id.

[12] See id.

[13] See id.

[14] See id.

[15] Id. pp. 4-5.

[16] See id. p. 5.

imprisonment and five years of supervised release.[17]

Plaintiff filed her complaint on April 27, 2017.[18] On July 11, 2017, the United States filed a motion to dismiss.[19] After referral to the undersigned, Plaintiff asked for leave to file a first amended complaint in order to "streamline[] and clarif[y] the allegations" without adding any new causes of action.[20] The court granted this request, and Plaintiff filed her first amended complaint on October 27, 2017.[21] In response, the United States filed the pending Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss, thereby mooting out its prior motion.[22]

## II. Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). The party

---

[17] See id.

[18] See Doc. 1, Pl.'s Compl.

[19] See Doc. 9, Def. United States' Mot. to Dismiss.

[20] See Doc. 22, Pl.'s Mot. for Leave to File a 1st Am. Compl. p. 1.

[21] See Doc. 23, Ord. Dated Oct. 27, 2017; Doc. 24, Pl.'s 1st Am. Compl.

[22] See Doc. 29, Def. United States' Mot. to Dismiss Pl.'s 1st Am. Compl.

4

asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919. In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint. John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

### III. Analysis

The United States asserts that the sexual assault of Plaintiff occurred outside the scope of Hawkins' employment, and, therefore, sovereign immunity is not waived under the FTCA. Plaintiff disagrees, contending that the assault occurred within the scope of his employment and was foreseeable; Plaintiff further argues that because scope of employment is fact-intensive issue, discovery must

be conducted before her claims against the United States may be dismissed on this basis.

The United States' sovereign immunity is waived for tort claims brought against the federal government under the FTCA. 28 U.S.C. § 2674; see also Tsolmon v. U.S., 841 F.3d 378, 382 (5th Cir. 2016). The limited waiver of sovereign immunity under the FTCA allows for the recovery of monetary damages "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission" of federal employees acting within the scope of employment. 28 U.S.C. § 2679(b)(1). "Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." Tsolmon, 841 F.3d at 382 (citing Willoughby v. U.S. ex rel. U.S. Dep't of the Army, 730 F.3d 476, 479 (5th Cir. 2013)); 28 U.S.C. § 1346(b)(1). Courts strictly construe this waiver of sovereign immunity and any doubts are resolved in favor of the United States. Tsolmon, 841 F.3d at 382 (citing Willoughby, 730 F.3d at 480).

The FTCA contains an intentional tort exception preserving the United States' immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); see also Millbrook v. U.S., 569 U.S. 50, 52 (2013). However, the law

enforcement proviso under the FTCA "extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the 'acts or omissions of investigative or law enforcement officers.'" Millbrook, 569 U.S. at 52-53 (quoting 28 U.S.C. § 2680(h)). A law enforcement officer is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). In Millbrook, the Supreme Court held that "the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence or making an arrest." 569 U.S. at 57.

To hold the United States liable under the FTCA, the tortious conduct must occur within the scope of employment. Leleux v. U.S., 178 F.3d 750, 757 (5th Cir. 1999). Whether an action falls within the scope of employment is governed by state law. 28 U.S.C. § 1346(b)(1); Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006). Under Texas law, "an employee's conduct is considered to fall within the scope of his employment if his actions were (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." Bodin, 462 F.3d at 484

7

(citations and internal quotations omitted); see also Goodyear Tire & Rubber Co., 236 S.W.3d 754, 757 (Tex. 2007).

"[W]hen the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." Bodin, 462 F.3d at 485 (quoting Tex. & Pac. Ry. Co. v. Hagenloh, 247 S.W.2d 236, 241 (Tex. 1952)). In other words, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002). The burden is on the plaintiff to show that the employee acted for the employer, and not for personal reasons. Bodin, 462 F.3d at 485.

Courts have held that assault is "not generally considered to be within the scope of an employee's authority." Linke v. U.S., CIVIL ACTION NO. W-14-CV-444, CIVIL ACTION NO. W-14-CV-445, 2015 WL 12743611, at *3 (W.D. Tex. Mar. 31, 2015)(unpublished)(quoting Bryants v. Lucent Techs., Inc., 175 S.W.3d 845, 850 (Tex. App.–Waco 2005, pets. denied); see also Bodin, 462 F.3d at 485 ("It is not ordinarily within the scope of a servant's authority to commit an assault on a third person."). Numerous courts have found that sexual assault falls outside the scope of employment, as it is clearly motivated by personal reasons. See, e.g., Hamburg v. U.S.

Postal Serv., Civil Action No. H-10-2186, 2010 WL 4226461, at **4-5 (S.D. Tex. Oct. 20, 2010)(unpublished)("When an employee allegedly commits a sexual assault on a third person, that is not generally within the scope of his authority as an employee because it is not in furtherance of the employer's business or for the accomplishment of an object for which the employee is employed, and is motivated by personal sexual gratification."); Shirley v. U.S., No. 4:03-CV-1385-Y, 2006 WL 708651, at *3 (N.D. Tex. Mar. 21, 2006)(unpublished), aff'd, 232 F. App'x 419 (5th Cir. 2007)("In sexually assaulting [an inmate], [the officer] stepped aside from his employment to accomplish his own, rather than the United States', purpose."); Davis v. U.S., 474 F. Supp.2d 829, 832 (N.D. Tex. 2007)("when a prison guard turns from the duties of the job to violate BOP policy and the law by intentionally raping an inmate, the government is not liable for his intentional, criminal actions."); M.D.C.G. v. U.S., CIVIL ACTION NO. 7:15-CV-552, 2016 WL 6638845, at *10 (S.D. Tex. Sept. 13, 2016)(unpublished)("When he inflicted physical and sexual abuse on Plaintiffs, [the officer] was departing from [the U.S. Customs and Border Protection's] purposes to such an extent that his actions must be deemed his own, and his employer may not be held liable for them under the theory that he was acting in the scope of his employment."); Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 468 (5th Cir. 1994)(holding that physical sexual abuse by a teacher of a student could not "even

9

colorably be within the course or scope of [the teacher's] employment"); Linke, 2015 WL 12743611, at *3 (finding that sexual assault of prostitutes by a military officer was outside the scope of employment "[b]ecause personal gratification motivates sexual misconduct–instead of serving the employer"); Buck v. Blum, 130 S.W.3d 285, 289-90 (Tex. App.–Houston [14th Dist.] 2004, no pet.)(finding that a doctor who assaulted a patient during a medical examination was acting "in his own prurient interest and ceased to be acting for the employer.").

While court agrees with the general rule that whether Hawkins was acting within the scope of employment is a fact question, it is clear under the facts as alleged by Plaintiff and, in conformity with the above-cited cases, that Hawkins was acting for his own personal gratification when he assaulted Plaintiff.  Hawkins was not acting within his authority, in furtherance of the government's business.  Accordingly, the court concludes as a matter of undisputed fact that Hawkins was acting outside the scope of his employment in his actions directed at Plaintiff and, therefore, his conduct cannot be imputed to the United States.[23]

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that the United States' motion to dismiss be **GRANTED** on the basis that the court

---

[23] The court will not reach the United States' other arguments, as it finds that the first issue is dispositive of the claims against the United States.

10

lacks subject matter jurisdiction over the Untied States. Plaintiff's claims against Hawkins are the only remaining claims in this lawsuit.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 1st day of June, 2018.

U.S. MAGISTRATE JUDGE