United States District Court
Southern District of Texas

**ENTERED**

July 17, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY PETEET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1312 |
| | § | |
| SAMUEL HAWKINS and THE UNITED | § | |
| STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant United States of America's ("United States") Motion to Dismiss (Doc. 29). The court has considered the motion, the response, Plaintiff's Objections to Magistrate Judge's Memorandum and Recommendation, the response thereto, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the United States' motion to dismiss be **GRANTED**.

## I.  Case Background

Plaintiff filed this action against the United States and Defendant Samuel Hawkins ("Hawkins") (collectively, "Defendants") claiming that Hawkins violated her Eighth Amendment rights and asserting claims against Defendants for negligence, assault, battery, and intentional infliction of emotion distress pursuant to

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 20, Ord. Dated Aug. 10, 2017.

the Federal Tort Claims Act[2] ("FTCA").[3]  Plaintiff alleges that she was sexually abused and assaulted by Hawkins, a prison guard, while she was incarcerated at the federal detention center in Houston, Texas.[4]

Plaintiff alleges that the abuse by Hawkins commenced in July 2015, when he "began a course of intimidation and coercion" towards her.[5]  Plaintiff claims that Hawkins forced her to perform oral sex on him at least six times and engaged in vaginal sex with Plaintiff at least once before November 15, 2015.[6]  Hawkins also had sexual relationships with other female inmates during this time period.[7] When other inmates learned that Plaintiff was sexually involved with Hawkins, she faced "an extremely hostile environment" which included "intimidation and mistreatment by fellow inmates."[8]

On November 14, 2015, Hawkins placed Plaintiff's cell mate in a special housing unit, which Plaintiff alleges was "for clearly bogus reasons."[9]  On November 15, 2015, with four days remaining on her sentence, "Hawkins coerced [Plaintiff] to attempt to taunt male

---

[2]     28 U.S.C. §§ 1346(b), 2671-80.

[3]     See Doc. 24, Pl.'s 1st Am. Compl.

[4]     See id.

[5]     Id. p. 3.

[6]     See id.

[7]     See id.

[8]     Id. pp. 3-4.

[9]     Id. p. 4.

2

inmates at the Detention Center, . . . and Hawkins then became physically jealous and angry with [Plaintiff] when she spoke with a male inmate."[10]  Hawkins took Plaintiff to her cell and told her, "We are going to have our first fight tonight."[11]  Hawkins then raped Plaintiff.[12]  Hawkins later went back to Plaintiff's cell to show her a sexual harassment complaint against Hawkins made by another female inmate.[13]  Once a shift change occurred on November 15, 2015, Plaintiff reported the assault and was taken to a hospital where she was examined and administered a rape kit.[14]  Upon her return to the detention center, Plaintiff remained in isolation in the medical wing where she alleges she was "subjected to intimidation and extremely cruel treatment" until she was released from confinement on November 19, 2015.[15]

The United States Department of Justice's Office of the Inspector General proceeded to investigate the incident and the rape kit was positive for Hawkins' DNA.[16]  Hawkins was charged with, and pled guilty to, one count of sexual abuse of a ward pursuant to 18 U.S.C. § 2243(b), receiving a sentence of five months

---

[10]    Id.

[11]    Id.

[12]    See id.

[13]    See id.

[14]    See id.

[15]    Id. pp. 4-5.

[16]    See id. p. 5.

imprisonment and five years of supervised release.[17]

On February 11, 2016, Plaintiff filed her administrative claim with the Federal Bureau of Prisons ("BOP"), which was received by BOP on March 14, 2016.[18]  In Plaintiff's administrative complaint, Plaintiff provided only the following facts as the basis for her claims:

> [Plaintiff] was a federal prisoner at the Houston Detention Center in Houston, Texas from May 5, 2015- November 19, 2015.  During this period, she was repeatedly sexually abused by a guard named Samuel Hawkins.
>
> A few days prior to [Plaintiff's] departure, on or about November 15, 2015, Mr. Hawkins forcefully engaged in oral and vaginal sex with [Plaintiff].
>
> This matter is being investigated by Bruce Douglas of the Justice Department in Houston.  Mr. Douglas advised that the DNA obtained in the rape kit following the final assault identifies Mr. Hawkins.[19]

Plaintiff's administrative complaint was denied by BOP on January 23, 2017.[20]

Plaintiff filed her complaint with this court on April 27, 2017.[21]  On July 11, 2017, the United States filed a motion to

---

[17]    See id.

[18]    See Doc. 29-1, Ex. 1 to Def. United States' Mot. to Dismiss, Decl. of Eric W. Hammonds p. 2; Doc. 29-1, Ex. 1-1 to Def. United States' Mot. to Dismiss, Pl.'s Admin. Compl.

[19]    See Doc. 29-1, Ex. 1-1 to Def. United States' Mot. to Dismiss, Pl.'s Admin. Compl. p. 2.

[20]    See Doc. 29-1, Ex. 1-2 to Def. United States' Mot. to Dismiss, BOP Denial Letter.

[21]    See Doc. 1, Pl.'s Compl.

dismiss.[22]  After referral to the undersigned, Plaintiff asked for leave to file a first amended complaint in order to "streamline[] and clarif[y] the allegations" without adding any new causes of action.[23]  The court granted this request, and Plaintiff filed her first amended complaint on October 27, 2017.[24]  In response, the United States filed the pending Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss, thereby mooting out its prior motion.[25]

## II.  Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3).  Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).  The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction.  Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919.  In considering such a motion, the court must take as true all

---

[22]     See Doc. 9, Def. United States' Mot. to Dismiss.

[23]     See Doc. 22, Pl.'s Mot. for Leave to File a 1st Am. Compl. p. 1.

[24]     See Doc. 23, Ord. Dated Oct. 27, 2017; Doc. 24, Pl.'s 1st Am. Compl.

[25]     See Doc. 29, Def. United States' Mot. to Dismiss Pl.'s 1st Am. Compl.

uncontroverted factual allegations in the complaint.  John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).  The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

### III. Analysis

Plaintiff has alleged claims for assault, battery, intentional infliction of emotion distress ("IIED"), and negligence against the United States.  The court will first address Plaintiff's assault and battery claims, and then turn to Plaintiff's claims for IIED and negligence.

### A.  Assault and Battery

The United States asserts that the sexual assault of Plaintiff occurred outside the scope of Hawkins' employment, and, therefore, sovereign immunity is not waived under the FTCA.  Plaintiff disagrees, contending that the assault occurred within the scope of

6

his employment and was foreseeable; Plaintiff further argues that because scope of employment is fact-intensive issue, discovery must be conducted before her claims against the United States may be dismissed on this basis.

The United States' sovereign immunity is waived for tort claims brought against the federal government under the FTCA. 28 U.S.C. § 2674; see also Tsolmon v. U.S., 841 F.3d 378, 382 (5th Cir. 2016).  The limited waiver of sovereign immunity under the FTCA allows for the recovery of monetary damages "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission" of federal employees acting within the scope of employment.  28 U.S.C. § 2679(b)(1).  "Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction."  Tsolmon, 841 F.3d at 382 (citing Willoughby v. U.S. ex rel. U.S. Dep't of the Army, 730 F.3d 476, 479 (5th Cir. 2013)); 28 U.S.C. § 1346(b)(1). Courts strictly construe this waiver of sovereign immunity and any doubts are resolved in favor of the United States.  Tsolmon, 841 F.3d at 382 (citing Willoughby, 730 F.3d at 480).

The FTCA contains an intentional tort exception preserving the United States' immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or

interference with contract rights." 28 U.S.C. § 2680(h); see also Millbrook v. U.S., 569 U.S. 50, 52 (2013). However, the law enforcement proviso under the FTCA "extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the 'acts or omissions of investigative or law enforcement officers.'" Millbrook, 569 U.S. at 52-53 (quoting 28 U.S.C. § 2680(h)). A law enforcement officer is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). In Millbrook, the Supreme Court held that "the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence or making an arrest." 569 U.S. at 57.

To hold the United States liable under the FTCA, the tortious conduct must occur within the scope of employment. Leleux v. U.S., 178 F.3d 750, 757 (5th Cir. 1999). Whether an action falls within the scope of employment is governed by state law. 28 U.S.C. § 1346(b)(1); Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006). Under Texas law, "an employee's conduct is considered to fall within the scope of his employment if his actions were (1) within the general authority given him; (2) in furtherance of the

employer's business; and (3) for the accomplishment of the object for which the employee was employed." Bodin, 462 F.3d at 484 (citations and internal quotations omitted); see also Goodyear Tire & Rubber Co., 236 S.W.3d 754, 757 (Tex. 2007).

"[W]hen the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." Bodin, 462 F.3d at 485 (quoting Tex. & Pac. Ry. Co. v. Hagenloh, 247 S.W.2d 236, 241 (Tex. 1952)). In other words, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002). The burden is on the plaintiff to show that the employee acted for the employer, and not for personal reasons. Bodin, 462 F.3d at 485.

Courts have held that assault is "not generally considered to be within the scope of an employee's authority." Linke v. U.S., CIVIL ACTION NO. W-14-CV-444, CIVIL ACTION NO. W-14-CV-445, 2015 WL 12743611, at *3 (W.D. Tex. Mar. 31, 2015)(unpublished)(quoting Bryants v. Lucent Techs., Inc., 175 S.W.3d 845, 850 (Tex. App.-Waco 2005, pets. denied); see also Bodin, 462 F.3d at 485 ("It is not ordinarily within the scope of a servant's authority to commit an assault on a third person."). Numerous courts have found that

9

sexual assault falls outside the scope of employment, as it is clearly motivated by personal reasons. See, e.g., Hamburg v. U.S. Postal Serv., Civil Action No. H-10-2186, 2010 WL 4226461, at **4-5 (S.D. Tex. Oct. 20, 2010)(unpublished)("When an employee allegedly commits a sexual assault on a third person, that is not generally within the scope of his authority as an employee because it is not in furtherance of the employer's business or for the accomplishment of an object for which the employee is employed, and is motivated by personal sexual gratification."); Shirley v. U.S., No. 4:03-CV-1385-Y, 2006 WL 708651, at *3 (N.D. Tex. Mar. 21, 2006)(unpublished), aff'd, 232 F. App'x 419 (5th Cir. 2007)("In sexually assaulting [an inmate], [the officer] stepped aside from his employment to accomplish his own, rather than the United States', purpose."); Davis v. U.S., 474 F. Supp.2d 829, 832 (N.D. Tex. 2007)("when a prison guard turns from the duties of the job to violate BOP policy and the law by intentionally raping an inmate, the government is not liable for his intentional, criminal actions."); M.D.C.G. v. U.S., CIVIL ACTION NO. 7:15-CV-552, 2016 WL 6638845, at *10 (S.D. Tex. Sept. 13, 2016)(unpublished)("When he inflicted physical and sexual abuse on Plaintiffs, [the officer] was departing from [the U.S. Customs and Border Protection's] purposes to such an extent that his actions must be deemed his own, and his employer may not be held liable for them under the theory that he was acting in the scope of his employment."); Doe v. Taylor

Indep. Sch. Dist., 15 F.3d 443, 468 (5th Cir. 1994)(holding that physical sexual abuse by a teacher of a student could not "even colorably be within the course or scope of [the teacher's] employment"); Linke, 2015 WL 12743611, at *3 (finding that sexual assault of prostitutes by a military officer was outside the scope of employment "[b]ecause personal gratification motivates sexual misconduct–instead of serving the employer"); Buck v. Blum, 130 S.W.3d 285, 289-90 (Tex. App.-Houston [14th Dist.] 2004, no pet.)(finding that a doctor who assaulted a patient during a medical examination was acting "in his own prurient interest and ceased to be acting for the employer.").

Plaintiff seeks to defeat the present motion by arguing that whether Hawkins was acting within the scope of employment is a fact question.  However, Plaintiff has alleged no fact that would support a conclusion that Hawkins was acting with any other purpose than his own gratification.  Accordingly, the court concludes as a matter of undisputed fact that Hawkins was acting outside the scope of his employment in his actions directed at Plaintiff and, therefore, his conduct cannot be imputed to the United States.

## B.  **Acts of the United States**

Defendant contends that Plaintiff failed to administratively exhaust her claims for negligence and IIED.  Plaintiff responds that her claims were properly presented, as she provided the factual basis for these claims.

11

The elements of a claim for IIED under Texas law are as follows: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (3) the resulting emotional distress was severe." Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003)(citing Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998)). Conduct is actionable only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)). Whether conduct is extreme and outrageous is a question of law for the court to be analyzed on a case-by-case basis, and only when reasonable minds may differ will the question be presented to a jury. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 817 (Tex. 2005); Tiller, 121 S.W.3d at 713.

In order to establish a cause of action for negligence, a plaintiff must show: (1) the existence of a duty; (2) a breach of that duty; and (3) damages that are a proximate result of the breach. Nabors Drilling, U.S.A., Inc. v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009). A plaintiff must show the same elements for a claims such as negligent supervision, hiring, or retention. See, e.g., Alternatives Unlimited, Inc. v. Grp. Excellence, Ltd., No. 3:10-CV-02283-BF, 2012 WL 715970, at *7 (N.D. Tex. Mar. 5,

12

2012)(unpublished); <u>Moore v. Aqrawi</u>, No. 01-03-00917-CV, 2007 WL
2743494, at *4 (Tex. App.–Houston [1st Dist.] Sept. 20, 2007, no
pet.)(unpublished).   These causes of action "are all simple
negligence causes of action based on an employer's direct
negligence rather than on vicarious liability." <u>Moore</u>, 2007 WL
2743494, at *4 (citing <u>Castillo v. Gared, Inc.</u>, 1 S.W.3d 781, 786
(Tex. App.–Houston [1st Dist.] 1999, pet. denied); <u>Verinakis v. Med.
Profiles, Inc.</u>, 987 S.W.2d 90, 97 (Tex. App.–Houston [14th Dist.]
1998, pet. denied).

For a negligence claim, proximate cause is made up of both
cause-in-fact and foreseeability.   <u>Lee Lewis Constr., Inc. v.
Harrison</u>, 70 S.W.3d 778, 784 (Tex. 2001).   Foreseeability is
explained as an "actor, a person of ordinary intelligence, should
have anticipated the dangers that [its] negligent act created for
others." <u>Id.</u> at 785.  "Foreseeability does not require an actor to
anticipate the precise manner in which the injury will occur;
instead, the injury need only be of a general character that the
actor might reasonably anticipate." <u>Id.</u>

In its motion to dismiss, the United States submits that
Plaintiff's administrative complaint did not put the Bureau of
Prisons ("BOP") on notice that she intended to bring claims for
negligent supervision or IIED.   A party may only bring a claim
under the FTCA against the United States for negligence if the
claim has first been "presented . . . to the appropriate Federal

agency." 28 U.S.C. § 2675(a). This is a jurisdictional prerequisite to bringing a lawsuit under the FTCA. Life Partners Inc. v. United States, 650 F.3d 1026, 1030 (5th Cir. 2011); see also Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980). The Fifth Circuit has explained that this requirement is in place "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite a fair settlement of tort claims asserted against the United States." Life Partners, 650 F.3d at 1030 (quoting Frantz v. United States, 29 F.3d 222, 224 (5th Cir. 1994)(internal quotation marks omitted)).

To satisfy this jurisdictional prerequisite, a plaintiff is required to give the agency "facts sufficient to allow [her] claim to be investigated." Id. (quoting Cook v. United States, 978 F.2d 164, 166 (5th Cir. 1992)). However, the Fifth Circuit "has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims." Id. (quoting Frantz, 29 F.3d at 224). Rather, if "the Government's investigation of [the] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." Id. (quoting Rise, 630 F.2d at 1071). However, the Fifth Circuit has said that "[e]ven though the requirements of the FTCA are minimal, an FTCA claimant must nonetheless provide facts sufficient to allow his claim to be investigated and must do so in a timely manner." Cook, 978 F.2d at

14

166 (5th Cir. 1992).

In Plaintiff's first amended complaint, Plaintiff alleges that the United States had a duty to protect Plaintiff as an inmate, and that it created the environment which allowed for the assault of Plaintiff by Hawkins.  Plaintiff states that the United States failed to "meet its duty of care . . . in its screening, hiring, training, supervising, evaluating, and retaining of Hawkins."[26] As to her claim for IIED, Plaintiff alleges that the actions of the United States "were outrageous, and those actions were deliberately intended to cause, and/or recklessly disregard of the probability of causing, the infliction of severe emotional distress on [Plaintiff]."[27]

In contrast to the above, Plaintiff's administrative notice only alleged that Hawkins assaulted her and did not contain any allegation that Bureau of Prisons staff negligently supervised Hawkins or took any action to inflict emotional distress upon Plaintiff.  Relative to her negligence claim, Plaintiff did not allege in her administrative notice any facts to suggest that it should have been foreseeable to the Bureau of Prisons management that Hawkins would assault her, a necessary element of proximate

---

[26]    Doc. 24, Pl.'s Am. Compl. p. 11.

[27]    Id. p. 13.

15

causation.[28]   See Lewis, 70 S.W.3d at 784.   Unlike Plaintiff's amended complaint, Plaintiff's administrative notice did not allege that Hawkins had sexual relationships with other female inmates or that management was aware that Hawkins placed Plaintiff or other female inmates in the special housing unit to facilitate sexual encounters.

As to Plaintiff's claim for IIED, Plaintiff did not include any facts in her administrative notice that would lead to an investigation into whether there was intentional conduct on the part of Bureau of Prisons staff to cause her severe emotional distress.   For example, there is no mention in the notice that after her return to the detention center post-assault, Bureau of Prisons staff subjected her to intimidation or cruel treatment as alleged in her amended complaint.

Therefore, the court concludes that the administrative complaint did not put the United States on notice of Plaintiff's claims for negligence or IIED.   Plaintiff failed to exhaust these claims, and therefore, they must be dismissed.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that the United

---

[28]    Attached to Plaintiff's response to the pending motion to dismiss are Bureau of Prison policies that seek to prevent sexual assault on federal prisoners by employees and/or other prisoners and the actions to be taken when there is a complaint of improper contact by a prisoner and a report on sexual assaults in federal prisons dated September 2009.   See Doc. 17-2, Sexually Abusive Behavior Prevention & Intervention Program Dated Jan. 6, 2014; Doc. 17-3, The Dep't of Justice's Efforts to Prevent Staff Sexual Abuse of Federal Inmates Dated Sept. 2009.   The mere existence of these policies and report does not relieve a plaintiff of the notice requirement under the FTCA.

States' motion to dismiss be **GRANTED** on the basis that the court lacks subject matter jurisdiction over the United States. Plaintiff's <u>Bivens</u> claim and state law assault and battery claims against Hawkins remain pending.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 17th day of July, 2018.


_____
U.S. MAGISTRATE JUDGE

17